* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones with minor modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Insurance Company of State of Pennsylvania is the carrier on risk and AIG Claim Services is the Third Party Administrator.
4. Plaintiff's average weekly wage was $423.57 yielding a compensation rate of $282.39.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission Forms and filings relating to this case were stipulated into evidence as Stipulated Exhibit 2.
7. The issues before the Full Commission are: (i) whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on May 25, 1999; and (ii) if so, what compensation, if any, is due plaintiff.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-four years old and had the equivalent of a high school education. Plaintiff is originally from Mexico City, Mexico, but has lived in the United States for over twenty-five years as a resident alien.
2. Plaintiff began working for Anvil Knitwear in 1985 as a material handler in its dyeing and finishing plaint in Swannanoa. Approximately two years later, he received on-the-job training in the operation of a forklift, and his job classification changed to that of material handler/forklift driver.
3. Since 1992, plaintiff has experienced a number of problems related to a degenerative disc condition to his low back. These problems generally occurred after he had been involved in increased activities at home or at work. The first such problem occurred in April 1992, when plaintiff was diagnosed with a lumbar strain after he reported feeling pain while lifting a roll of cloth. Plaintiff remained out of work for a period of two to three months and received conservative treatment. Approximately two years later, plaintiff received treatment for an acute lumbar strain from Dr. Leslie Cargile of Family Care in Black Mountain. He reported that, while at work, a number of fabric rolls had started to fall off a skid and that, when he tried to hold the rolls back, he felt a sudden pull in his low back. When conservative treatment, including three weeks of physical therapy, did not reduce plaintiff's pain, Dr. Cargile referred plaintiff to Dr. Stewart J. Hartley of the Blue Ridge Bone Joint Clinic. Under Dr. Hartley's care, plaintiff underwent an MRI, which revealed he had a degenerative disc at the L5-S1 level. Dr. Hartley concluded that plaintiff had a degenerative disc condition and prescribed continued conservative treatment. *Page 4 
4. Plaintiff did not receive additional treatment for his low back until July 1997. At that time, he returned to Dr. Cargile following an incident in which he attempted to lift a bag of fabric. He reported that he felt pain in his low back and a shock running down his left leg. During a subsequent examination, plaintiff's wife informed Dr. Cargile that his back pains were an ongoing problem and that he often had to stop playing with his children due to backaches. Dr. Cargile referred plaintiff to Dr. Donald L. Mullis of Asheville Orthopaedic Associates, who diagnosed him as having a lumbar strain and a degenerative disc problem in his low back. A second MRI returned normal with no evidence of disc protrusion or disc herniation. To improve plaintiff's low back strength and range of motion, Dr. Mullis prescribed a work hardening program, which plaintiff completed in December 1997. Thereafter, Dr. Mullis determined plaintiff had reached maximum medical improvement and assigned a 2.5 percent permanent partial disability rating to his low back. Plaintiff received compensation for this disability rating from defendants and returned to full-duty work. Thereafter, he continued to work full duty, working on average an eight-hour shift per day. Plaintiff did not report any additional injury to his back and did not seek further treatment.
5. On May 25, 1999, plaintiff was involved in a forklift collision while working at the finishing plant. This incident is the subject of plaintiff's current claim. On that date, he was unloading a number of empty boxes when another forklift back in to the forklift he was operating. Plaintiff stated that after the collision, he felt warmness in his back and a tingling sensation running down his right leg. That afternoon, plaintiff received treatment from the Sisters of Mercy Urgent Care Facility in Swannanoa, where he was diagnosed with a lumbar-strain-sprain and was released to return to light-duty work. Plaintiff did not return to the light-duty *Page 5 
position offered by the defendant-employer, and instead elected to take several days of vacation.
6. Approximately one week after the May 25, 1999 incident, plaintiff was seen by Dr. James J. Hoski, an orthopedic surgeon with the Southeastern Spine Center, who also diagnosed plaintiff with a lumbar strain-sprain. Dr. Hoski prescribed Naprosyn and recommended conservative treatment including three weeks of physical therapy. He returned plaintiff to light-duty work with a fifteen-pound lifting restriction. Plaintiff then returned to work for defendant-employer in the light-duty position offered to him. When plaintiff completed physical therapy, he returned to Dr. Hoski and reported that his back pain was subsiding. Dr. Hoski then recommended a transitional work plan, such that by September 1999 plaintiff has returned to full-duty work as a forklift driver.
7. During a follow-up examination with Dr. Hoski, plaintiff complained of continued pain in his low back and numbness in his right leg. Between December 1999 and February 2000, plaintiff received three lumbar epidural corticosteroid injections during which he continued to work fully duty. The injections proved beneficial and Dr. Hoski was of the opinion that, as of May 2000, plaintiff's condition had returned to his "baseline" level before the forklift collision.
8. Plaintiff returned to Dr. Hoski in October 2000, reporting that he had a flare-up in his back pain. Plaintiff did not report any specific trauma or incident, but rather attributed the pain to an increase in activity. Thereafter, plaintiff underwent a second series of lumbar epidural corticosteroid injections after which his condition again returned to baseline. By January 2001, plaintiff was again working full-time in the same forklift operator position he held prior to the *Page 6 
incident on May 25, 1999. Defendants paid for plaintiff's medical treatment through January 2001.
9. Throughout the first half of 2001, plaintiff worked fully duty, averaging forty and fifty hours per week. During this same period, he did not sustain any traumatic injury or seek any treatment for his low back. However, on July 18, 2001, plaintiff returned to Dr. Hoski complaining of low back pain and numbness in his legs. Again, plaintiff did not attribute the pain or numbness to any specific incident, but rather to general increased activity. He also informed Dr. Hoski that he had been to see his family physician three weeks previously and that this physician had removed him from work. After an examination, Dr. Hoski recommended another MRI and continued plaintiff out of work pending the results. The MRI showed an annular tear on the L5-S1 disc. A subsequent discogram and post discogram CT scan confirmed that the tear was the source of plaintiff's pain.
10. On March 3, 2002, plaintiff underwent intradiscal electrothermal therapy, which is a percutaneous procedure where a catheter is placed into the disc and the disc is heated in a manner which tightens and firms the area of the tear. Plaintiff remained out of work and continued to treat with Dr. Hoski.
11. Plaintiff contends that his period of disability and medical treatment beginning in June 2001 were related to the May 25, 1999 accident.
12. Dr. Hoski, plaintiff's treating physician, testified at deposition that plaintiff suffers from a degenerative disc condition, and that he had "no opinion" regarding the causal relationship between the May 25, 1999 forklift accident and the worsening of plaintiff's back symptoms in June 2001, more than two years after the accident. Moreover, Dr. Hoski testified *Page 7 
that the plaintiff's back symptoms attributable to the May 25, 1999 forklift accident had indeed resolved by May 2000, such that plaintiff's back condition had returned to baseline.
13. Dr. Stephen M. David, a board-certified orthopedic surgeon, performed an independent medical evaluation of plaintiff on August 1, 2003, as ordered by the Full Commission. The plaintiff reported to Dr. David that he had returned to work as a forklift driver for another employer, working 40 hours per week. Although plaintiff presented with symptoms of pain in the lubrosacral region L5-S1, and bilateral leg pain, there was no evidence that he had been experiencing such pain continuously since he was last seen by Dr. Hoski. Following a physical examination, Dr. David requested further diagnostic studies including an updated MRI to determine whether any further medical treatment was necessary. The MRI, taken on August 15, 2003, showed L5-S1 internal disc derangement with degeneration and facet joint change, which Dr. David opined was no different than an MRI taken in 2001.
14. Based on his findings, Dr. David diagnosed plaintiff with degenerative disc at L5-S1, the same condition that was diagnosed as early as 1994. Dr. David, like Dr. Hoski, testified that plaintiff has a historic and chronic back condition related to the degenerative condition at L5-S1 and, as such, plaintiff experiences periodic flare-ups of pain with increased activity. Dr. David stated at deposition that:
 [Plaintiff] has a history right now where he is not asymptomatic; he is having some level of continued discomfort. There are some functional limitations that he has. So, he falls into the category of having continued chronic but active problems related to his disk. And therefore, there's a probability that the disk would continue to be symptomatic and require treatment in the future.
 A degenerative disk can continue to radiographically deteriorate over a period of time. And in certain patients, that can correlate with worsening symptoms. *Page 8 
Consequently, Dr. David could not state with any degree of medical certainty that there was a causal link between the May 25, 1999 forklift accident and plaintiff's inability to work in June 2001, or that plaintiff's current condition is causally related to the May 25, 1999 incident. To the contrary, Dr. David noted that the fact that plaintiff had worked full time during the six months prior to the June 2001 flare-up of his back symptoms was an indication that plaintiff had reached maximum medical improvement from any injury sustained in May 1999.
15. Based on the totality of the evidence of record, the Full Commission finds that plaintiff has failed to carry his burden of establishing that either his medical treatment, or his disability since June 2001, is causally related to the May 25, 1999 incident. Dr. Hoski, plaintiff's treating physician, and Dr. David, who provided an IME, could not provide a causal link between plaintiff's current low back condition and the May 25, 1999 forklift accident. The only apparent conclusion that can be drawn from the competent medical evidence is that plaintiff has a long-standing history of low back problems that are related to a degenerative disc condition at the L5-S1 level, and that he experiences periodic flare-ups of this condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident, in the form of a lumbar-strain-sprain to the back, arising out of and in the course of his employment with Defendants on May 25, 1999. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Plaintiff has received all reasonably necessary medical treatment related to his lumbar strain-sprain. Defendants have provided all such necessary and related medical treatment to plaintiff. N.C. Gen. Stat. § 97-25, 97-25.1.
3. Plaintiff has not met his burden of proving by a preponderance of the evidence that his current low back condition for which he seeks additional medical compensation and benefits is causally related to his work injury of May 25, 1999. Click v. Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980); Wall by Wall v. North HillsProperties, Inc., 125 N.C. App. 357, 361, 481 S.E.2d 303, 306 rev. denied, 346 N.C. 289, 487 S.E.2d 573 (1997).
Thus, plaintiff's claim for additional disability benefits and medical compensation for treatment since June 2001 must be denied. Id.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional benefits and medical treatment must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10 
 S/ __________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1